EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID JAROSLAWICZ, individually and on behalf of all others similarly situated, | ) ) ) ) Case No. 1:15-cv-00897-EJW ) ) Honorable Evan J. Wallach ) ) ) ) ) |
| *Plaintiffs*, | |
| v. | |
| M&T BANK CORPORATION, *et al.*, | |
| *Defendants.* | |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO
## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF POST-ARGUMENT MEMORANDUM

This Sur-Reply is limited to addressing two arguments raised for the first time in Plaintiffs' April 17, 2023 Reply Brief in Support of Post-Argument Memorandum, D.I. 203 (the "Post-Argument Reply Brief"). *First*, Plaintiffs submitted *In re Pattern Energy Group Inc. Securities Litigation*, Case Number 20-275 (D. Del. 2023). That case was reported online less than a week before the filing of Defendants' Memorandum of Law in Response to Plaintiffs' Post-Argument Brief, D.I. 199, and was not covered by that submission. As Plaintiffs implicitly acknowledged by dedicating six pages of the Post-Argument Reply Brief to the case, *Pattern Energy* is highly relevant to the proper definition of the class in this case. *Second*, Plaintiffs incorrectly stated that Defendants' submission of a declaration from Dr. Marcia Kramer Mayer should be excluded. Dr. Mayer's declaration was directly in response to Plaintiffs' submission of a third (new) report from their expert M. Travis Keath, who expressly relies upon Dr. Mayer's work in his reports, and discussed Dr. Mayer in his most recent report.

**1. The *Pattern Energy* Decision**

Plaintiffs' Post-Argument Reply submitted *In re Pattern Energy Group Inc. Securities*

*Litigation*, 2023 WL 2655537 (D. Del. Mar. 27, 2023). Contrary to Plaintiffs' arguments, the decision is persuasive authority that this Court should *exclude* from Plaintiffs' proposed class definition all shareholders who sold their Hudson City stock prior to the closing of the M&T-Hudson City merger.

    *Pattern Energy* involved a Section 14(a) claim arising from the merger of Pattern Energy Group Inc. and the Canada Pension Plan Investment Board in 2020. *See* 2023 WL 265537, at *1. The *Pattern Energy* plaintiffs contended that shareholders "were damaged by the false proxy because the price they received from selling their shares on the market was less than it would have been if the true state of affairs was known." *Id.* at *3. The plaintiffs sought to certify a class of all persons and entities holding Pattern Energy's class A common stock as of the record date of January 31, 2020. *Id.* at *1. The court determined that both Section 14(a) (governing the plaintiffs' substantive claims) and Rule 23 (governing class certification) required that the proposed class be narrowed to exclude all shares held as of the record date but sold prior to the shareholder vote on the merger (March 10, 2020) or the merger's close (March 16, 2020). *Id.* at *2.

    First, with respect to Section 14(a), the court dismissed the plaintiffs' arguments that selling shareholders "were damaged by the false proxy because the price they received from selling their shares on the market was less than it would have been if the true state of affairs was known" (*id.* at *3). Judge Noreika held the shareholders' claims were not cognizable under Section 14(a) because even if their allegations were true, the asserted harm "would not be the result of the [m]erger itself, which had yet to take place when the shares were sold" (*id.* at *4). The court also determined that no authority supported the plaintiffs' assertion that "a shareholder c[an] recover under Section 14(a) for damages not caused by the transaction authorized by the

allegedly deficient proxy statement." *Id.* In other words, shareholders selling prior to a merger's closing were outside the purpose of, and the protections afforded by, Section 14(a).

*Second*, the court assessed the *Pattern Energy* plaintiffs' claims under Rule 23, notwithstanding that they had not asserted valid claims under Section 14(a). The court held that even if the selling shareholders *could* assert valid Section 14(a) claims, their inclusion in a class with non-selling shareholders would destroy the predominance required by Rule 23 at the class certification stage: "[p]laintiffs cannot introduce class-wide evidence to prove that the [m]erger caused the [s]elling [s]hareholders harm when they sold before it was known whether the transaction would close." *Id.* at *5. In addition, "unlike the stockholders who exchanged their . . . shares for the [m]erger consideration . . . the prices at which the [s]elling [s]tockholders sold varied throughout each day," and "[t]hose prices would have been impacted not only by the transaction price and the likelihood of closing factors, but also factors that may be unique to any given day." *Id.* Accordingly, "inclusion of the [s]elling [s]hareholders would destroy predominance as to the elements of causation and damages" because Rule 23(b)(3) requires "a *common* question of damages be answered through *common* evidence using a *common* measure of damages acceptable under § 14(a)." *Id.*

*Pattern Energy* is analogous to this case (albeit Hudson City's shares consistently rose in value after the proxy vote at issue).[1] Plaintiffs here bring a claim under Section 14(a) and seek to

---

[1] *Pattern Energy*'s holding that Section 14(a) shareholders must prove causation by showing that they were "damaged by the transaction itself" (2023 WL 2655537, at *4) is consistent and should be read in conjunction with *Resolute Energy Corp. Sec. Litig.*, 2021 WL 327385 (D. Del. Feb. 1, 2021), which requires Section 14(a) plaintiffs to demonstrate that they would have voted down the merger at issue absent a misleading or omissive proxy and that the company would have performed better in the merger's absence. Thus shareholders held through closing, they must satisfy both the *Pattern Energy* and *Resolute* frameworks.

3

certify a single class of shareholders that includes those who sold prior to the close of the merger at issue as well as those who held through closing. *See* Plaintiffs' Mem. of Law in Supp. of Their Mot. for Class Certification, D.I. 136, at 12. As in *Pattern Energy*, Plaintiffs also maintain that the shareholders who sold prior to the closing "were damaged as a result of [their shares] being sold . . . at depressed prices relative to those that would have prevailed but for the wrongdoing." *See* Expert Report of M. Travis Keath & David F. DeRosa, D.I. 136-35, ¶ 18. And, just as in *Pattern Energy*, Plaintiffs have advanced a theory of damages to the selling shareholders that necessarily requires analysis of "the transaction price . . . the likelihood of closing factors . . . [and] factors that may be unique to any given day." *Pattern Energy*, 2023 WL 265537, at *5.[2]

Contrary to Plaintiffs' assertions in their Post-Argument Reply Brief, the holding of *Pattern Energy* strongly supports *curtailing* the proposed class in this case. As the court specifically found, shareholders who sell their stock prior to a merger's closing are outside the scope of Section 14(a). Further, even if those shareholders' claims were cognizable under the statute, their inclusion in a proposed class with shareholders who held through closing would defeat the predominance required by Rule 23. Plaintiffs nevertheless offer a number of spurious arguments in an effort to evade *Pattern Energy'*s plain holding. Principal among these is that there was a period of two-and-a-half years between the merger vote and closing here, whereas in

---

[2]    Plaintiffs have also asserted that the selling shareholders suffered so-called "Dividend Damages" incurred "as a result of foregone dividends allegedly caused by the merger delay." *See* Expert Report of M. Travis Keath & David F. DeRosa, D.I. 136-35, ¶ 18. As the *Pattern Energy* court explained, however, a class asserting claims under Section 14(a) cannot establish "transaction causation . . . by pointing to alleged omissions in a proxy where 'the shareholders' votes did not authorize the transactions that caused the losses.'" 2023 WL 2655537, at *5 (quoting *Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)). Plaintiffs have not alleged, nor can they, that Hudson City's shareholders authorized its dividend reductions.

4

*Pattern Energy* only six days elapsed. *See* Post-Argument Reply Brief at 18-19. To apply *Pattern Energy*, Plaintiffs say, would therefore "turn the securities laws on their head" by "resulting in a situation where the worse the deception, the lesser the consequences." *Id.* at 19. But length of time between either the issuance of the proxy or the vote and the closing does not help Plaintiffs here. *Pattern Energy* holds that shareholders who sold their shares prior to a merger's closing are outside the scope of Section 14(a). And, in any event, the greater period of time between the proxy vote at issue here and the ultimate transaction increases the possibility that the putative class members' shares would be affected by factors other than the alleged wrongdoing. Plaintiffs also cannot evade *Pattern Energy*'s holding with assertions that unidentified "securities laws" require their claims be allowed to proceed. *See, e.g.*, Post-Argument Reply Brief at 20 (arguing the court should reject *Pattern Energy* because "the securities laws are not so rigid"). Plaintiffs are not proceeding under the securities laws at large, but under one specific statute: Section 14(a). And, as *Pattern Energy* makes clear, Section 14(a) plaintiffs who sold prior to a merger's closing cannot assert claims under that statute.

Plaintiffs' remaining arguments, all of which flow from the conclusory assertion that this case is "atypical" and therefore outside the bounds of precedent, are no more persuasive. To support this argument Plaintiffs cite, for example, a Section 10(b) decision from the pleadings stage to argue that loss causation can be found where shareholders were "induced to make an investment . . . which turned out to be worthless." *See* Post-Argument Reply Brief at 20, citing *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000). But this is not a Section 10(b) case based on allegations of fraud. And, in any event, Plaintiffs' arguments are inapposite because here the company at issue, Hudson City, *increased* in value after the shareholder vote.

5

Plaintiffs' remaining arguments are equally unavailing. They include references to the "aborted purchaser-seller" doctrine (Post-Argument Reply Brief at 20-21) and to law governing tender offers under Section 14(e) (*id.* at 22-23). None of these additional arguments has any bearing whatsoever on this Section 14(a) action. As Plaintiffs' own authority states, the aborted purchaser-seller doctrine is one of "statutory standing," not class certification. *See Starostenko v. UBS AG*, 2023 WL 34947, at *8 n.7 (S.D.N.Y. Jan. 4, 2023). The doctrine has never been applied to, and has no relevance to, Section 14(a): it merely "allow[s] investors who allege[] that they were fraudulently induced to abort or delay a sale [of shares] to have standing to bring suit under *Rule 10b-5*." *Gambella v. Guardian Investor Servs. Corp.*, 75 F. Supp. 2d 297, 299 (S.D.N.Y. 1999) (emphasis added). Section 14(e), meanwhile, encompasses fraudulent practices only in the context of tender offers. As the U.S. Supreme Court has long held, "[T]he *sole* purpose of the Williams Act [which created Section 14(e)] was the protection of investors *who are confronted with a tender offer*." *Piper v. Chris-Craft Inds., Inc.*, 430 U.S. 1, 35 (1977) (emphasis added). Plaintiffs' attempt to import the aborted purchaser-seller doctrine and Section 14(e) principles into this Section 14(a) case is bereft of any foundation in law or reason.

Finally, Plaintiffs assert as an overarching matter that the Court should take a "practical approach" in assessing their class certification arguments because doing so is "consistent with the statutory scheme." Post-Argument Reply Brief at 21. In other words, Plaintiffs request that the Court ignore existing Section 14(a) law and find that their claims are both cognizable and satisfy Rule 23's predominance requirement despite contrary authority and the absence of any legal support with any connection whatsoever to Section 14(a).

2. **The Mayer Declaration**

On January 16, 2023, Plaintiffs submitted their Post-Argument Memorandum and accompanying Supplemental Expert Report of M. Travis Keath. *See* D.I. 189 & 189-10.

6

Plaintiffs' memorandum included new argument regarding the role of Mr. Keath's work in their class certification arguments, while Mr. Keath's Supplemental Expert Report sought to bolster his flawed trading model by "expand[ing] on . . . [the] credentials and work" of Dr. Marcia Kramer Mayer, whose methodology Mr. Keath purports to have followed. Supp. Expert Report of M. Travis Keath, D.I. 189-10, ¶ 4. Defendants responded in relevant part by submitting a declaration from Dr. Mayer discussing her trading model methodology and the myriad ways that Mr. Keath had deviated from it. *See generally* Decl. of Marcia Kramer Mayer, D.I. 200-25. Unable to confront the substance of Dr. Mayer's declaration, Plaintiffs assert that it should be struck because Defendants had not timely disclosed Dr. Mayer as an expert and her declaration constitutes inadmissible expert testimony. *See* Post-Argument Reply Brief. at 11-14. Plaintiffs' arguments are without merit.

Defendants have consistently maintained that Mr. Keath did not properly follow Dr. Mayer's methodology and have moved to strike his opinions and testimony (as well as those of his co-author Dr. DeRosa) on that basis. *See generally Daubert* Brief, D.I. 146. To assist its assessment of those arguments, the Court requested during the December 15, 2022 hearing in this matter that Plaintiffs provide additional information regarding other instances, if any, of Dr. Mayer's trading model methodology applied in securities litigation. Plaintiffs provided a handful of inapposite examples, each of which Defendants distinguished. *See* Defendants' Memorandum of Law in Response to Plaintiffs' Post-Argument Brief, D.I. 199, at 40.[3] Plaintiffs

---

[3] As Defendants noted, eight of Plaintiffs' thirteen examples involved trading models used in the settlement context; one merely referenced Dr. Mayer as an example but did not apply her methodology; one applied Dr. Mayer's methodology at the lead plaintiff stage to assess trading volume rather than damages; two cited Dr. Mayer but followed different methodologies; and one relied on Dr. Mayer but was subject to a *Daubert* challenge, after which the case settled. *See* Defendants' Memorandum of Law in Response to Plaintiffs' Post-Argument Brief, D.I. 199, at 40.

*also* submitted a new expert report (his third) from Mr. Keath that sought to buttress his deficient work; the report repeatedly referenced Dr. Mayer. *See* D.I. 189-10. Defendants responded to Plaintiffs' submission of Mr. Keath's new report by providing a limited declaration from Dr. Mayer addressing Mr. Keath's application of her work.[4] Given the breadth of Plaintiffs' response to the Court's inquiry, they cannot credibly argue that Dr. Mayer's declaration should be excluded.

---

[4] Plaintiffs have also asserted that Mr. Keath's trading model is unnecessary to class certification and that, in any event, only twenty percent of the class shares at issue are affected by Mr. Keath's trading model. *See, e.g.,* Post-Argument Reply Brief at 9-10. Even if a trading model is not necessary to class certification as a general matter, Plaintiffs cannot retreat from the simple fact that they have sought to satisfy Rule 23 through a trading model here. Nor, for that matter, do Plaintiffs provide any support for the assertion that only twenty percent of class shares are affected by Mr. Keath's trading model. Without it, Plaintiffs have access only to limited public data summarizing the quarter-end positions of institutional shareholders in Hudson City. While that data may provide a broad sense of the changes in particular shareholders' Hudson City positions by quarter, it says nothing about actual trading behavior (*e.g.*, when trades occurred, the volume of those trades, and so on). This publicly available information lacks the granularity to sustain Plaintiffs' damages theories, which require that Plaintiffs know (or be able to estimate) when Hudson City shareholders made specific sales.

Date: May 23, 2023

| | |
|---|---|
| **POTTER ANDERSON & CORROON LLP** | **REED SMITH LLP** |
| /s/ *Kevin R. Shannon* | /s/ *Brian M. Rostocki* |
| Kevin R. Shannon (DE Bar No. 3137) | Brian M. Rostocki (DE Bar No. 4599) |
| Hercules Plaza | Anne M. Steadman (DE Bar No. 6221) |
| 1313 N. Market Street, 6th Floor | 1201 Market Street, Suite 1500 |
| Wilmington, Delaware 19899-0951 | Wilmington, Delaware 19801 |
| Tel: 302-984-6000 | Tel: 302-778-7500 |

**SULLIVAN & CROMWELL LLP**

Tracy Richelle High (*admitted pro hac vice*)
125 Broad Street
New York, New York 10004-2498
Tel: 212-558-4000

**SIMPSON THACHER & BARTLETT LLP**

Jonathan K. Youngwood (*admitted pro hac vice*)
Janet A. Gochman (*admitted pro hac vice*)
Tyler A. Anger (*admitted pro hac vice*)
Katherine A. Hardiman (*admitted pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel: 212-455-2000

*Counsel for Defendants Hudson City Bancorp, Inc., Denis Salamone, Victoria H. Bruni, Donald O. Quest, Joseph G. Sponholz, Scott A. Belair, Michael W. Azzara, William G. Bardel, and Cornelius E. Golding*

*Counsel for Defendants M&T Bank Corp., The Estate of Robert G. Wilmers, Rene F. Jones, Mark J. Czarnecki, Brent D. Baird, Angela C. Bontempo, Robert T. Brady, Jefferson T. Cunningham, III, Gary N. Geisel, John D. Hawke, Jr., Patrick W. E. Hodgson, Richard King, Jorge G. Pereira, Melinda R. Rich, Robert E. Sadler, Jr., and Herbert L. Washington*