**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DAVID JAROSLAWICZ, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>M&T BANK CORPORATION, *et al*.,<br><br>*Defendants*. | ) | Case No. 1:15-cv-00897-EJW<br><br>Honorable Evan J. Wallach<br><br>**REDACTED VERSION FILED: MARCH 26, 2024** |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

**POTTER ANDERSON & CORROON LLP**
Kevin R. Shannon (DE Bar No. 3137)
Hercules Plaza
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899-0951
Tel: 302-984-6000

**REED SMITH LLP**
Brian M. Rostocki (DE Bar No. 4599)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel: 302-778-7500

**SULLIVAN & CROMWELL LLP**
Tracy Richelle High (*pro hac vice*)
125 Broad Street
New York, New York 10004-2498
Tel: 212-558-4000

*Counsel for Defendants Hudson City Bancorp, Inc., Denis Salamone, Victoria H. Bruni, Donald O. Quest, Joseph G. Sponholz, Scott A. Belair, Michael W. Azzara, William G. Bardel, and Cornelius E. Golding*

**SIMPSON THACHER & BARTLETT LLP**
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
V. Noah Gimbel (*pro hac vice* )
Katherine A. Hardiman (*pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel: 212-455-2000

*Counsel for Defendants M&T Bank Corp., The Estate of Robert G. Wilmers, Rene F. Jones, Mark J. Czarnecki, Brent D. Baird, C. Angela Bontempo, Robert T. Brady, T. Jefferson Cunningham, III, Gary N. Geisel, John D. Hawke, Jr., Patrick W. E. Hodgson, Richard King, Jorge G. Pereira, Melinda R. Rich, Robert E. Sadler, Jr., and Herbert L. Washington*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

I. Class Certification and Briefing....................................................................................................3

II. Supplemental Briefing ....................................................................................................4

III. The Court's August 28, 2023 Order and Parties' Rule 23(f) Briefing................................5

IV. The Court's November 1, 2023 and February 7, 2024 Orders ..........................................6

V. Plaintiffs' Motion for Reconsideration/Rehearing.............................................................7

VI. Plaintiffs' Renewed Motion ....................................................................................................7

LEGAL STANDARD....................................................................................................8

ARGUMENT....................................................................................................9

I. Plaintiffs' "Renewed Motion" Improperly Relitigates their Original Motion ....................9

II. Plaintiffs' Renewed Motion and Additional Exhibits Do Not Solve the Problems Identified by the Court Regarding Dividend Damages....................................................11

A. The Court (Twice) Correctly Found the Merger Did Not Cause Dividend Damages....................................................................................................12

B. Plaintiffs' "Additional" Evidence Fails to Establish Causation ............................14

III. Plaintiffs' Revised Class Definition Is Overbroad and Not Ascertainable.......................16

A. The Revised Class Definition Fails to Exclude All Merger Arbitrageurs as Required by this Court to Satisfy Rule 23's Adequacy and Typicality Requirements ....................................................................................................17

B. No Class That Effectively Excludes Merger Arbitrageurs Here Can Be Susceptible to a Reliable and Administratively Feasible Mechanism to Identify Class Members ....................................................................................................19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) .......... 8, 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 10, 13

*Gen. Elec. Co. v. Cathcart*,
980 F.2d 927 (3d Cir. 1992) .......... 12

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
141 S. Ct. 1951 (2021) .......... 14

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020) .......... 8, 9

*Harnish v. Widener University School of Law*,
833 F.3d 298 (3d Cir. 2016) .......... 8

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) .......... 8, 17

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) .......... 8

*In re Niaspan Antitrust Litig.*,
67 F.4th 118 (3d Cir. 2023) .......... 20

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .......... 8, 20

*Pepper* v. *United States*,
562 U.S. 476 (2011) .......... 8

**Rules**

D. Del. LR 7.1.3(c)(2) .......... 21

Fed. R. Civ. P. 23(f) .......... 10

Rule 23(b)(3) .......... 8

## INTRODUCTION

In its February 7, 2024 Order (D.I. 223, the "February 7 Order"), this Court denied Plaintiffs' Motion for Class Certification (D.I., 136, the "Original Motion") after multiple rounds of briefing (and submission of expert reports from both sides), two in-person oral arguments, and two additional telephone conferences. Rather than seeking appellate review, Plaintiffs launched a last-ditch, two-pronged challenge to this Court's ruling, filing effectively two reconsideration motions, labeling the second-filed and untimely one a Renewed Motion for Class Certification (D.I. 228, the "Renewed Motion"). Both motions are largely premised on the same evidence and arguments this Court has already considered and rejected. Defendants timely responded to Plaintiffs' original Motion for Reconsideration on February 28, 2024, and through this filing directly oppose the Renewed Motion. Neither motion has any merit.

Plaintiffs' Renewed Motion differs in only two respects from their Original Motion. First, it presents limited additional evidence (all available since summer 2022) which Plaintiffs argue establishes a causal connection between the Proxy and Hudson City's dividend reduction. Plaintiffs do not explain why they declined to present this evidence earlier despite ample opportunity to do so, nor why they waited over six months after the Court's August 28 decision first rejected their dividend damages theory to challenge that ruling. Second, the Renewed Motion includes a revised (albeit inaccurate) class definition purporting to exclude merger arbitrageurs following this Court's ruling that class representatives' claims diverge from those of arbitrageurs in frustration of Rule 23's typicality and adequacy requirements. *See* D.I. 83-84. These tweaks are insufficient to sustain class certification.

*First*, Plaintiffs' Renewed Motion is an improper effort to seek reconsideration of the Court's February 7 Order, while evading the time and page limits and exacting legal standard for reconsideration. Much of the Renewed Motion, which purports to "present[] evidence primarily as

to Dividend Damages," Renewed Mot. at 4 n.5, actually attacks the Court's February 7 Order as to *all* of Plaintiffs' damages theories. *See id.* at 16-20. The law of the case demands that this Court only consider the Renewed Motion to the extent it presents novel evidence and a revised class definition.

*Second*, Plaintiffs' Renewed Motion cannot cure the defect that led this Court to deny their Original Motion concerning dividends or otherwise: namely, Plaintiffs have not asserted a viable theory of damages susceptible to class-wide proof. After this Court rejected all of Plaintiffs' damages theories in its February 7 Order, Plaintiffs now seek to resuscitate their *twice-rejected* theory of dividend damages. But Plaintiffs' "additional" evidence does nothing to upend the Court's conclusion that dividend damages could not have been directly caused by the merger.

*Third*, Plaintiffs have not defined an ascertainable class that excludes merger arbitrageurs. Their class definition excludes one category of arbitrageurs while leaving in others. And, indeed, no class definition can effectively exclude merger arbitrageurs without giving rise to an endless series of individualized mini-trials, thereby precluding certification on ascertainability grounds.

Like Plaintiffs' Original Motion, their Renewed Motion must fail.

## BACKGROUND

Amidst "the weak economic conditions that prevailed following the recession" of 2008, Hudson City faced significant difficulty "grow[ing] its business and generat[ing] returns on equity and assets at levels consistent with its historical experience." Decl. Ex. 3 (Joint Proxy) at 64.[1] Consequently, in 2011, Hudson City cut its quarterly dividend from $0.15 per share to $0.08 per share. *See* Decl. Ex. 20 (Hudson City 8-K (Apr. 20, 2011)) at 5, 20. By 2012, after months of

[1] Defendants incorporate certain Exhibits from prior filings, as well as submit new Exhibits with this Opposition. The Declaration of V. Noah Gimbel submitted with this Opposition contains an index identifying the docket numbers of relevant prior submissions.

negotiations, M&T offered to buy Hudson City and, on April 18, 2013, Hudson City shareholders voted overwhelmingly to approve the merger. When the merger closed in 2015, Hudson City shareholders earned a massive premium of nearly $2 billion.[2]

## I. <u>Class Certification and Briefing</u>

Plaintiffs' efforts to seek class certification began approximately seven years after this litigation commenced. More than a year after the initiation of discovery in late 2020, and just months before discovery closed, Plaintiffs filed their Original Motion on April 13, 2022. On June 8, 2022, Defendants filed their Original Opposition and a motion to exclude the report and opinions of Plaintiffs' purported experts Mr. Keath and Dr. DeRosa. D.I. 146 (the "*Daubert* Motion"). On July 8, 2022, Plaintiffs filed their Reply in support of their Original Motion and Opposition to Defendants' *Daubert* Motion. D.I. 157 & 158 (the "*Daubert* Opposition"). By this time, Defendants had already produced thousands of documents in discovery, including all but two of the "additional" exhibits cited in Plaintiffs' Renewed Motion, both of which were produced timely in July 2022, before the end of fact discovery.

The parties' class certification and *Daubert* briefing extensively addressed the legal and factual materials raised in Plaintiffs' Renewed Motion, including Plaintiffs' theory of dividend damages. Plaintiffs' Original Motion argued that Hudson City's dividend cuts were a result of the Merger and "atypical of the market trend." Original Mot. at 10. Defendants' Original Opposition explained that Hudson City "attributed [] dividend reductions to a 'lack of reinvestment opportunities for the cash flows generated by [its] mortgage-related assets' and 'unprecedented low market interest rates,'" and pointed out that Hudson City had previously cut dividends. Original Opp. at 8. Defendant's *Daubert* Motion also explained, relying on Defendants' rebuttal

---

[2] For further background, see the statements of facts from Defendants' opposition to the Original Motion and 23(f) Petition. *See* D.I. 144 (the "Original Opposition"), at 4-8; 23(f) Petition at 4-5.

expert Professor Denis that Plaintiffs' dividend damages theory ran "contrary to basic corporate finance principles," which provide that: (1) "Dividends are inherently within a company's discretion to issue, or not, and no shareholder is entitled [to] receipt of a future dividend simply because the company at issue paid a dividend in the past," and (2) "dividends that are not distributed to shareholders remain an asset of the company to be used for current and future business activities, an obvious and integral component of value to a company's shareholders." *See Daubert* Mot. at 19-20; Decl. Ex. 1 (Denis. Rep.) ¶¶ 39-47. It further noted the failure by Plaintiffs' expert, Dr. DeRosa, to identify "particular [board] minutes supporting a connection between the merger delay and Hudson City's dividend cuts." *Daubert* Mot. at 18-19. In short, notwithstanding amble opportunities to submit material regarding dividend damages and knowledge that dividend damages were substantively covered in the parties' extensive briefing, Plaintiffs elected not to submit additional minutes or other evidence with their *Daubert* Opposition, nor to submit any merits expert reports. *See* D.I. 178.

## II. Supplemental Briefing

Beyond the initial briefing on Plaintiffs' Original Motion, the Court allowed the parties to expand the record on class certification well beyond the close of discovery. On December 15, 2022, after discovery had closed (fact discovery on August 19; expert discovery on November 21), the Court held oral argument on Plaintiffs' Original Motion and Defendants' *Daubert* Motion. By then, *all* of the "additional" exhibits to the Renewed Motion had long been produced. At the hearing, Defendants again raised that Dr. DeRosa was unable to identify any board minutes to support his view that Hudson City dividends were affected by the delay in the merger. *See* D.I. 188 at 101:7-102:6. Plaintiffs filed a Post-Argument Memorandum and Reply, along with numerous declarations and exhibits (on January 16 and April 17, 2023, respectively), but elected not to address this argument in their 67 pages of supplemental briefing and over 300 pages of

additional documents, or submit any of the additional evidence on which they now rely. D.I. 189, 203. Nor did Plaintiffs raise any of this evidence at a January 19, 2023 telephonic hearing, in further oral argument held on June 1, 2023, or at a further telephonic conference on July 5, 2023. These omissions are stark in light of Plaintiffs' representation at the June 1 oral argument that their dividend damages theory presents "a fact case . . . and that's our burden to prove the causal connection between [the dividend reduction and] the merger delay." *See* Decl. Ex. 38 (June 1, 2023 Tr.) at 95:1-8.

## III. The Court's August 28, 2023 Order and Parties' Rule 23(f) Briefing

On August 28, 2023, this Court issued its first ruling on Plaintiffs' Original Motion, granting in part and denying in part Plaintiffs' Motion for Class Certification and Denying Defendants' *Daubert* Motion. *See* D.I. 218 (the "August 28 Order"). In relevant part, the Court held that "the class representatives are atypical of and inadequate to represent merger arbitrageurs, and merger arbitrageurs must therefore be excluded from the class." *Id.* at 85. Notably, it also held that Plaintiffs' asserted dividend damages could not have been caused by the merger. *Id.* at 55-56.

With respect to Dividend Damages, the Court cited Plaintiffs' failure to offer any "evidence that continued issuance of dividends was part of the Merger Agreement,"[3] and noted that Plaintiffs' reliance on Hudson City Board Minutes "actually supports an inference that the issuance of Hudson City dividends was indeed a matter of board discretion," and not attributable to the merger. *Id.* It held that dividend damages "are too attenuated to satisfy the Third Circuit's rule in *General Electric*," *Id.* at 56, and suggested that "[i]f Dividend Damages were the only alleged damages, this could have been grounds to deny class certification." *Id.*

[3] Plaintiffs' now state that the Joint Proxy "mentions the word 'dividend' no fewer than 184 times." Renewed Mot. at 2. This and other transaction documents were before the Court when it concluded the Merger Agreement did not promise continued dividends. Regardless, none of the "mentions" offered any guarantee of future dividends, nor do Plaintiffs suggest otherwise.

On August 28, the Court partly granted Plaintiffs' Original Motion based on its provisional finding that Plaintiffs' trading and closing damages theories presented live questions of law susceptible to common proof at trial. *Id.* at 40-41. On September 11, 2023, Defendants filed a Petition seeking permission under Rule 23(f) to appeal the August 28 Order to the Third Circuit. *Jaroslawicz v. M&T Bank Corp.*, No. 23-8038 (3d Cir. Sept. 11, 2023), D.I. 1-2 (the "23(f) Petition"), which Plaintiffs opposed on September 22, 2023. *Id.* (3d Cir. Sept. 22, 2023), D.I. 12. The Third Circuit denied Defendants' 23(f) Petition on October 27, 2023. Plaintiffs neither moved for reconsideration nor sought to appeal this holding under Rule 23(f), calling into question their attempt to challenge it now through their "Renewed Motion."

## IV. The Court's November 1, 2023 and February 7, 2024 Orders

On November 1, 2023, after reviewing the Parties' 23(f) briefing, this Court determined that it had "clearly erred in applying the Rule 23 legal standard for commonality and predominance as set forth in *Hydrogen Peroxide* by failing to rigorously consider the substance of the competing evidence in its August 28, 2023 Opinion," and vacated its August 28 Order. D.I. 221 at 3. The Court stated it would "weigh the conflicting testimony of the experts and resolve the genuine disputes inherent in these conflicts before making its predominance determination." *Id.* at 5. Following this order, Plaintiffs remained silent regarding any objection to the Court's holding on dividend damages, and neither Plaintiffs nor Defendants sought to submit additional briefing or evidence in response to the Court's Order on November 1.

On February 7, 2024, after further considering the Parties' expert reports, evidence, and arguments for and against class certification, this Court issued its opinion and order denying both Defendants' *Daubert* Motion and Plaintiffs' Original Motion, holding that "Plaintiffs have failed to satisfy their burden in their Motion for Class Certification regarding the commonality and predominance elements of Rule 23." Feb. 7 Order at 72. The Court's February 7 Order largely

imported the analysis set forth in its August 28 Order rejecting Plaintiffs' theory of dividend damages discussed above, and after analyzing Plaintiffs' evidence regarding trading and closing damages, found both to be wholly speculative and not susceptible to common proof at trial as required to satisfy Rule 23's commonality and predominance requirements. *See* Feb. 7 Order at 62-65.

## V. <u>Plaintiffs' Motion for Reconsideration/Rehearing</u>

On February 14, 2024, Plaintiffs filed a Motion for Reconsideration of the Court's February 7 Order, expressing their disagreement with various aspects of the Court's determination that they had failed to satisfy the Rule 23 prerequisites for class certification. D.I. 224, 225 (the "Reconsideration Motion"). Defendants filed their Opposition on February 28. D.I. 234. In their Reconsideration Motion, Plaintiffs argue for the first that the Court erred in ruling in August that dividend damages could not have been directly caused by the merger and were therefore not susceptible to class-wide proof. They insist that dividend damages are "recoverable as benefit of the bargain damages" and claim the Court's contrary ruling was "made without the benefit of record evidence." Reconsideration Mot. at 8. But Plaintiffs omit that they had access to this evidence for at least 13 months, could have submitted it before the Court's August (or February) ruling, and could have sought to append it to their Reconsideration Motion.

## VI. <u>Plaintiffs' Renewed Motion</u>

On February 26, 2024, more than 14 days after the February 7 Order, Plaintiffs filed their Renewed Motion. It largely incorporates the arguments from Plaintiffs' Original Motion, purports to "present[] evidence primarily as to Dividend Damages," and sets forth a new class definition. Renewed Mot. at 4 n.5, 11-12. Plaintiffs incorporated exhibits filed with their prior briefing and included ten additional exhibits (all of which could have been presented to the Court more than a year ago) in support of their Renewed Motion.

# LEGAL STANDARD

Although the Third Circuit has "decline[d] to import the stringent motion-for-reconsideration standard to a renewed motion for class certification," *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020), under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Pepper* v. *United States*, 562 U.S. 476, 506 (2011). Hence, a renewed motion does not invite the court to ignore its prior rulings altogether and start fresh.

Courts perform a rigorous analysis to determine if the party seeking class certification has met its burden of demonstrating compliance with Rule 23's requirements by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008). Such rigorous analysis often "involves judging credibility, weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims." *Harnish v. Widener University School of Law*, 833 F.3d 298, 304 (3d Cir. 2016) (citations omitted).

In addition to the enumerated Rule 23 prerequisites, ascertainability is another "essential prerequisite" to class certification under Rule 23(b)(3). *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013). To meet its burden on ascertainability, "a plaintiff must show, by a preponderance of the evidence, that the class [proposed] is 'currently and readily ascertainable based on objective criteria,' . . . and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Failure to articulate a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," renders a proposed class unascertainable and precludes certification. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

## ARGUMENT

Other than Plaintiffs' revised class definition and limited and untimely "additional" evidence in support of dividend damages, the Renewed Motion rests on the same arguments for class certification as the Original Motion. Rather than re-hashing prior arguments in opposition, Defendants hereby incorporate their Original Opposition, *Daubert* briefing, and Opposition to the Reconsideration Motion. *See* Motion for Leave to Incorporate by Reference, submitted contemporaneously with this Opposition. For the same reasons this Court enumerated in its February 7 Order, Plaintiffs' damages theories are wholly speculative and not susceptible to class-wide proof, and therefore fail to satisfy Rule 23's commonality and predominance requirements.

In this brief, Defendants limit their arguments to (1) address the improper form and timing of Plaintiffs' Renewed Motion, (2) address Plaintiffs' additional evidence on dividend damages advanced in their Renewed Motion, which does not move the needle on this Court's previous analysis, and (3) respond to the revised class definition, which is overbroad and unascertainable.

### I. Plaintiffs' "Renewed Motion" Improperly Relitigates their Original Motion

Plaintiffs' Renewed Motion is a thinly veiled attempt to end-run around this Court's February 7 Order and the Federal Rules Civil Procedure. While renewed motions for class certification may be appropriate for "plaintiffs who can cabin more clearly their class," *Hargrove*, 974 F.3d at 477, all but a fraction of a page of Plaintiffs' Renewed Motion urges reconsideration of their damages theories based on previously-rejected arguments and long-available evidence. There is no case law supporting the use of a renewed motion to repackage previously rejected arguments with old evidence that was available the first time those arguments were advanced.

The bulk of the Renewed Motion improperly expands on the arguments raised in Plaintiffs' Motion for Reconsideration. For example, Plaintiffs continue to insist all their "damages theories may be presented by common proof; no individualized inquiries are needed." Renewed Mot. at

16; *see also* Reconsideration Mot. at 8-9.[4] The Court already considered and rejected Plaintiffs' damages theories. *See* Feb. 7 Order at 41-53, 62-65. Similarly, Plaintiffs once again argue that "the probable outcome on the merits" should not be part of the Court's certification decision. Renewed Mot. at 15; *see also* Reconsideration Mot. at 3-5. Defendants' have already addressed at length why the Court's February 7 Order did not improperly engage with the merits in their Reconsideration Opposition. *See* D.I. 234 at 4-6, 9-10. If Plaintiffs want this Court to reconsider its prior ruling, the proper vehicle is their Motion for Reconsideration, subject to a 14-day filing deadline, 10-page limit, and clear error standard of review. If they want to appeal this Court's prior ruling, the proper vehicle is a 23(f) petition to the Third Circuit, likewise subject to an inflexible 14-day filing deadline. *See* Fed. R. Civ. P. 23(f). This Court should not permit Plaintiffs to use their Renewed Motion to skirt procedural limitations put in place to promote judicial efficiency and preserve the finality of judgments.

Plaintiffs also attack this Court's prior rulings and rehabilitate their twice-rejected theory of dividend damages by adducing what they call "additional record evidence." Renewed Mot. at 4. Plaintiffs had access to all of the exhibits filed with their Renewed Motion when they filed their Original Motion, except the handwritten notes and deposition testimony of former Hudson City executive Denis Salamone, which were available on July 13 and 19, 2022, respectively. Plaintiffs thus had access to this material many months before even the first hearing on class certification in December 2022 and the many subsequent hearings and written submissions that followed.

[4] Plaintiffs skip a step in the analysis. Rule 23 predominance requires them to establish that their damages theories present live questions of law or fact in the first place, then the Court looks to whether those questions are resolvable by common proof. Common proof of nothing leaves nothing to prove. The notion that "any method of measurement [is] acceptable [for class certification] so long as it can be applied classwide, no matter how arbitrary the measurements may be" has been explicitly rejected. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Moreover, Plaintiffs were on notice of the evidentiary deficiencies they now seek to cure as early as Defendants' June 2022 *Daubert* Motion, which flagged that Dr. DeRosa was "unable" "to identify the particular minutes supporting a connection between the merger delay and Hudson City's dividend cuts." *Daubert* Mot. at 18-19. Plaintiffs could have, but did not, refute this point in their *Daubert* Opposition by presenting the minutes they submit now. Defendants reiterated the same argument at the December 15 oral argument, *see* D.I. 188 at 101:7-102:6, after which the Court explicitly invited Plaintiffs to supplement their briefing and expert report, but Plaintiffs again chose not to submit the additional evidence they now find so persuasive. Plaintiffs should have presented this evidence earlier for the Court to efficiently consider the relevant record as a whole. Instead, they inexcusably chose to wait more than a year to bring this evidence to the fore, only after it became clear that they could not satisfy Rule 23.

Plaintiffs even improperly challenge the February 7 Order in ways that have no relation whatsoever to the "additional" evidence they present. For example, Plaintiffs argue that the "April 2013 Disclosures" did not "sever the causal link." *See* Renewed Mot. at 19. This has nothing to do with dividend damages, and is contrary to this Court's holding that those disclosures provided shareholders with "ample opportunity to amend their vote," Feb. 7 Order at 45, thereby severing the link. Plaintiffs' reconsideration arguments are improper, untimely, and meritless. This Court should not consider them.

## II. <u>Plaintiffs' Renewed Motion and Additional Exhibits Do Not Solve the Problems Identified by the Court Regarding Dividend Damages</u>

This Court's prior conclusions with respect to Plaintiffs' dividend damages theory are correct, and Plaintiffs' recycled arguments to the contrary are unavailing. Likewise, the evidence appended to Plaintiffs' Renewed Motion is cumulative of and consistent with the voluminous evidentiary record underlying this Court's August 28 and February 7 Orders. None of this evidence

changes this Court's correct holding that Plaintiffs' dividend damages theory fails Section 14(a)'s transaction causation element as a matter of law. The Renewed Motion must be denied.

### A. **The Court (Twice) Correctly Found the Merger Did Not Cause Dividend Damages**

Plaintiffs' attack on this Court's treatment of dividend damages repeats arguments that have been duly rejected. Plaintiffs claim that the Court's transaction causation holding actually pertained to loss causation, which Plaintiffs wrongly argue cannot be considered at class certification. Renewed Mot. at 17-18; *see* Reconsideration Mot. at 5 n.7 (explaining that this Court (rightly) rejected the contention that it may not consider loss causation at class certification). Section 14(a)'s transaction causation element requires—distinct from loss causation—that the "transaction [must be] the direct cause of the pecuniary injury for which recovery is sought." Feb. 7 Order at 53 (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)). Contrary to Plaintiffs' unsupported and misleading argument that this requirement "does not apply here," Renewed Mot. at 17, *General Electric*'s requirement that the transaction approved by proxy directly harm plaintiffs remains good law. Plaintiffs' loss causation arguments in the Renewed Motion, including their insistence that the alleged "concealment of regulatory issues and their consequence . . . need only be a 'substantial factor' in causing later harm," *id.* at 18, are entirely inapposite to their failure to satisfy the transaction causation element of Section 14(a) claims. After analysis of the evidence, the Court rightly concluded that "the issuance of Hudson City dividends was indeed a matter of board discretion, and thus could not satisfy the direct causation requirement of *General Electric*." Feb. 7 Order at 63-64.

Beyond the intervening impact of the board's discretion to lower Hudson City's dividends, dividend damages could not possibly be recoverable as part of Plaintiffs' "benefit of the bargain" as they claim. *See* Reconsideration Mot. at 8 & n.11. If the merger had closed earlier, Plaintiffs

would not have received *any* dividends from Hudson City. *See* Original Opp. at 16.[5] Plaintiffs alternatively claim that Hudson City shareholders should have begun to receive M&T dividends sooner. *See* Renewed Mot. at 11. Not only have Plaintiffs failed to submit a model to calculate damages based on delayed M&T dividends, which independently precludes class certification on such a theory under *Comcast*, there was no guarantee that M&T would issue dividends, and, regardless, M&T's historical dividends were proportionally lower than Hudson City's. *See* Decl. Ex 3 (Joint Proxy) at 38. Nor did M&T's advancing its record date deprive Hudson City shareholders of M&T dividend payments: M&T's board exercised *its* discretion to move the record date because M&T was "[redacted]," which "[redacted]" and had a "[redacted]" Decl. Ex. 39 (Salamone Tr.) at 229:23-230:12.

Nor does Plaintiffs' Renewed Motion refute or overcome the substantial evidence of alternative causes for Hudson City's dividend reduction. For one, Hudson City had already reduced dividends prior to the merger. *See, e.g.*, Original Opp. at 8 ("[I]n the second quarter of 2011, well before it engaged in merger discussions with M&T, Hudson City had reduced its dividend by $0.07, from $0.15 per share to $.08 per share."). Further, Hudson City had publicly stated that

---

[5] Plaintiffs admit for the first time that their dividend damages theory is premised on their alleged entitlement to dividends they would have received from standalone Hudson City "but for the Merger transaction's approval." Renewed Mot. at 3. Such a claim rests on the assumption that Plaintiffs would have rejected the Joint Proxy absent its alleged defects. This directly contradicts the benefit-of-the-bargain theory Plaintiffs have pursued in this case, which forms the exclusive basis for their damages model. That theory, by contrast, is premised on Plaintiffs' alleged entitlement to even more profits than what they earned from the merger, assuming that M&T did not face the allegedly undisclosed regulatory issues that led to the merger delay. Such incoherence between dividend damages and the but-for world underlying Plaintiffs' damages model provides an independent reason to preclude dividend damages sought in the Renewed Motion. *See Comcast Corp.*, 569 U.S. at 35 (a "model purporting to serve as evidence of damages . . . must measure only those damages attributable to [the] theory" of liability "accepted for class-action treatment").

dividend reductions in 2013 were due to the "unprecedented low interest rates" and poor market conditions, not the allegedly misleading Proxy Statement or the merger delay. *See* Decl. Ex. 1 (Denis Rep.) ¶ 46. In short, the Court's analysis of the record arrived at the only logical conclusion: the merger did not cause Hudson City's dividends to decrease.

Plaintiffs ignore these facts and claim they "need not prove price impact," urging this Court to wrongly import the inapposite standard for refuting the presumption of reliance in fraud-on-the-market claims brought under Section 10(b) of the Exchange Act. *See* Renewed Mot. at 16 (citing *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021)). *Goldman Sachs* dealt with the presumption that a company's *stock price* reflects any misrepresentations made by that company, and held that Section 10(b) defendants can only defeat that presumption by showing, by a preponderance of the evidence, that the alleged misstatements had no impact on stock price. 141 S. Ct. 1957. *Goldman Sachs* has no bearing on dividend damages in this 14(a) case: "price impact" has a specific meaning limited to the relationship between alleged misrepresentations and stock price—it does not translate to dividends issued at the discretion of a company's board. If anything, the Supreme Court's ruling in *Goldman Sachs* supports Defendants: its instruction to the court on remand to "take into account *all* record evidence relevant to price impact, regardless whether that evidence overlaps with materiality or any other merits issue" eviscerates Plaintiffs' attempts to prevent this Court from considering loss causation or other merits-adjacent issues at class certification *Id.* at 1961.

### B. Plaintiffs' "Additional" Evidence Fails to Establish Causation

Plaintiffs cite various Hudson City board minutes and the testimony of one former Hudson City officer to suggest that Hudson City "had a history of consistent dividends" prior to the merger and their cuts were "atypical of the market," such that Hudson City's dividend cuts can be causally linked to the merger delay and the Joint Proxy. Renewed Mot. at 6. Plaintiffs already made this

argument based on substantially similar evidence including board minutes. *See* Original Mot. at 9-10.[6] In response, the Court aptly noted, "the very need to produce [Board Minutes] as evidence of causation actually supports an inference that the issuance of Hudson City dividends was indeed a matter of board discretion." Feb. 7 Order at 63. The Board's discretion is also reflected in the Board Minutes themselves. *See, e.g.*, Decl. Ex. 40 (Feb. 7, 2013 Board Materials) at MTB00003816 ("[redacted]"). The preponderance of the evidence thus shows that "decisions about whether to issue dividends," which are "discretionary and authorized by a company's board" could not have been caused by the Merger. Feb. 7 Order at 63; Aug. 28 Order at 55.

With respect to Salamone's testimony, Plaintiffs incorrectly claim that he "admitted" a causal connection between the reduced dividend and the merger delay. *See* Renewed Mot. at 8. Salamone suggested that the merger delay *informed* the decision to decrease dividends from $.08 to $.04 per share, but that does not establish a causal relationship.[7] Salamone's testimony also made clear that Hudson City was facing hardships in 2012, reflecting that on-going dividends were not a guarantee. *See* Decl. Ex. 39 (Salamone Tr.) at 60:13-61:11. Plaintiffs insist that Salamone's testimony and related board minutes prove it "was not a matter of simple 'discretion,' but of forced economic necessity" that pushed Hudson City to lower its dividends. Renewed Mot. at 8. None of this evidence demonstrates that the board was deprived of its discretion as a result of the merger. As this Court noted in disposing of Plaintiffs' near-identical argument in their Original Motion,

---

[6] Indeed, *most* of the exhibits cited in Plaintiffs' Renewed Motion were exhibits from prior filings.

[7] Board minutes cited by Plaintiffs reflect the Board's agreement "[redacted]," *see* Ex. 42 (Dec. 8, 2014 Board Min.) at MTB00002102, thereby "attenuating the relationship between the transaction shareholders approved . . . and the final transaction that was eventually performed to closing[.]" Feb. 7 Order at 64.

the "Hudson City board could have opted to terminate the Merger Agreement instead of extending the termination date on any" of the three occasions the board voted to extend the merger's termination date prior to April 6, 2015. Feb. 7 Order at 49. Instead, the Hudson City Board believed proceeding with the merger was more beneficial to shareholders. *See* Ex. 41 (Apr. 16, 2015 Board Min.) at MTB00002154_R ("[redacted]"). Plaintiffs similarly mischaracterize Salamone's notes from a call with M&T to allege a causal connection exists. Renewed Mot. at 11. Salamone's testimony is clear that the "[redacted]" cited by Plaintiffs "[redacted]" Decl. Ex. 39 (Salamone Tr.) at 231:23-232:4. In sum, nothing in the Renewed Motion establishes the requisite causal connection to render dividend damages recoverable.

## III. <u>Plaintiffs' Revised Class Definition Is Overbroad and Not Ascertainable</u>

Plaintiffs' Renewed Motion accepts the Court's finding that merger arbitrageurs must be excluded from the class because class representatives' claims are atypical as to arbitrageurs, *see* Renewed Mot. at 11-12; Aug. 28 Order at 60-63, and purports to exclude from the class:

> persons or entities who hedged their Hudson City stock as part of merger arbitrage ("Merger Arbitrageurs") through the short-sale of M&T stock from February 20, 2013 (the record date) through the close of the merger (the "Merger Period"), but only to the maximum extent of the hedged stock as determined by the ratio of the total shares of said persons or entities on the record date compared to the total short-sales of M&T stock by said persons or entities during the Merger Period.

Renewed Mot. at 12. This definition fails for two reasons which, taken together, are fatal to Plaintiffs' Renewed Motion and preclude class certification. There is no fix this Court could order that would result in the articulation of an ascertainable class excluding merger arbitrageurs.

*First*, the revised definition does not exclude all merger arbitrageurs, and is therefore overbroad according to this Court's typicality analysis. Plaintiffs' revised class definition only excludes arbitrageurs who hedged their Hudson City stock through short-sales, but not through other "alternative strateg[ies]" Defendants (and the Court) enumerated. *See* Aug. 28 Order at 60 & n.6. The Renewed Motion does not even attempt to refute these alternative arbitrage instruments.

*Second*, Plaintiffs do not carry their burden to establish that their revised class definition is ascertainable, and any attempt to do so would be futile. Simply put, there is no "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," or whether a putative class member is excludable as a merger arbitrageur. *Hayes*, 725 F.3d at 355. This Court would need to conduct mini-trials to investigate putative class members' decade-old investment portfolio records (if such records still exist) to determine the existence or absence of a hedging strategy. Plaintiffs' inability to satisfy the ascertainability requirement precludes this Court from certifying their proposed class.

### A. <u>The Revised Class Definition Fails to Exclude All Merger Arbitrageurs as Required by this Court to Satisfy Rule 23's Adequacy and Typicality Requirements</u>

In its August 28 Order, this Court held that named Plaintiffs "the Belina Family and Mr. Krublit, as traditional shareholders, are not typical of merger arbitrageurs." Aug. 28 Order at 63. It further held that "there [is] a preponderance of evidence that the class representatives might not adequately represent the interest of merger arbitrageurs as the case proceeds," and that indeed "they also have not done so thus far in the litigation of their claims." *Id.* at 76. In support of these holdings, the Court credited "significant evidence" presented in Defendants' expert report by Dr. Jiang as to "why merger arbitrageurs are positioned differently than traditional investors with respect to the materiality of the Joint Proxy Statement omissions and the nature of the damages they could have experienced." *Id.* at 62. It also credited Dr. Jiang's evidence "that merger

arbitrageurs could represent a significant fraction of the total putative class." *Id.* In contrast, the Court pointed out "that on rebuttal Plaintiffs' own expert has suggested additional theories of harm for merger arbitrageurs that Plaintiffs have not asserted as theories of damages in this case[,] suggest[ing] that the interests of merger arbitrageurs may not be adequately protected by the class representatives." *Id.* at 63. Hence, the Court excluded merger arbitrageurs from the class and called for a revised definition excluding all arbitrageurs. *Id.* at 86.

Plaintiffs' revised class definition fails to comply with that ruling. By narrowly defining merger arbitrageurs as those who hedged their Hudson City stock by short-selling M&T stock, Plaintiffs fail to exclude merger arbitrageurs who hedged their Hudson City stock using derivative instruments based off of M&T stock besides short-sales, such as options, futures, forwards, or swaps. But merger arbitrageurs may use strategies other than short sales to hedge their long positions. *See* Decl. Ex. 2 (Jiang Rpt.) ¶ 33 n.37 ("[redacted]"); *see also* Feb. 7 Order at 9-10.

There is no evidence in the record that merger arbitrageurs here relied exclusively on short-sales of M&T stock to hedge their Hudson City stock. Indeed, it is unclear whether any evidence *could* prove the negative with respect to derivatives-based merger arbitrage strategies that may have been used here. Plaintiffs thus cannot contend that their revised class definition effectively excludes *all* merger arbitrageurs, rather than some indeterminate fraction thereof. By failing to exclude all merger arbitrageurs, Plaintiffs' revised class definition fails to satisfy Rule 23's typicality and adequacy prerequisites for the same reasons as its original class definition. *See*

*generally id.*; Decl. Ex. 2 (Jiang Rept.) ¶¶ 51-57 (distinguishing between arbitrageurs and traditional investors).

**B. <u>No Class That Effectively Excludes Merger Arbitrageurs Here Can Be Susceptible to a Reliable and Administratively Feasible Mechanism to Identify Class Members</u>**

Not only is Plaintiffs' revised class definition overbroad, but it also fails to satisfy the Third Circuit's ascertainability requirement because "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *Carrera*, 727 F.3d at 303-04. Here, there is simply no objective, "reliable, administratively feasible" way to identify excludable merger arbitrageurs without conducting an individualized analysis of each putative class member's investment holdings during the Merger Period. *See id.*

Even setting aside the improper inclusion of non-short-selling arbitrageurs, Plaintiffs' proposed class definition would require extensive individualized fact-finding to determine which Hudson City shareholders shorted M&T stock. Plaintiffs have made no effort to propose a methodology to identify such shareholders, nor even to describe the evidence on which they would rely to identify class members. But courts cannot rely on "potential class members' say so" to determine who is in and who is out, *id.* at 304; it is Plaintiffs' burden to demonstrate a reliable, administratively feasible identification methodology as a prerequisite to class certification. Plaintiffs rely on the general assertion that "[a]ctions under Section 14(a) tend to be straightforward and are routinely certified for class treatment," Renewed Mot. at 16, overlooking the fact that, unlike "routine" 14(a) cases, their claims attacking an undisputedly *profitable* merger transaction are anything but "straightforward." Renewed Mot. at 16.

Any class definition properly excluding all merger arbitrageurs would also be unascertainable, rendering futile any further efforts to revise. The types of derivative instruments used by merger arbitrageurs to hedge their investments are complex and not subject to registration

and recordkeeping requirements like transactions in publicly listed securities, meaning there is no reliable source for the type of data that could demonstrate the presence or absence of hedging transactions in derivatives. "[W]here nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Marcus*, 687 F.3d at 593. The only reliable source for information about hedging transactions would be individual investors' records, and even those are likely incomplete or unavailable now, more than a decade after the record date. In any event, examination of such records would mire the Court in a lengthy and burdensome series of mini-trials, after already expending extensive judicial resources on this case of dubious merit for almost nine years. Such are precisely the type of "serious administrative burdens that are incongruous with the efficiencies expected in a class action," and which the ascertainability requirement was developed to avoid. *See id*.

Because Plaintiffs can neither cure the defects in their overbroad class definition nor satisfy the ascertainability prerequisite, this Court must deny their Renewed Motion. Plaintiffs should not get a second (or third, or fourth, as it were) bite at the apple on reply. The local rules demand that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. LR 7.1.3(c)(2). And the Third Circuit has held that "[a]rguments raised for the first time before a district court in a reply brief are deemed forfeited." *In re Niaspan Antitrust Litig*., 67 F.4th 118, 135 (3d Cir. 2023).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion should be denied.

Date: March 19, 2024

**POTTER ANDERSON & CORROON LLP**

_/s/ *Kevin R. Shannon*___________
Kevin R. Shannon (DE Bar No. 3137)
Hercules Plaza
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899-0951
Tel: 302-984-6000

**SULLIVAN & CROMWELL LLP**
Tracy Richelle High (*admitted pro hac vice*)
125 Broad Street
New York, New York 10004-2498
Tel: 212-558-4000

*Counsel for Defendants Hudson City Bancorp, Inc., Denis Salamone, Victoria H. Bruni, Donald O. Quest, Joseph G. Sponholz, Scott A. Belair, Michael W. Azzara, William G. Bardel, and Cornelius E. Golding*

**REED SMITH LLP**

_/s/ *Brian M. Rostocki*_________
Brian M. Rostocki (DE Bar No. 4599)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel: 302-778-7500

**SIMPSON THACHER & BARTLETT LLP**
Jonathan K. Youngwood (*admitted pro hac vice*)
Janet A. Gochman (*admitted pro hac vice*)
V. Noah Gimbel (*pro hac vice pending*)
Katherine A. Hardiman (*admitted pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel: 212-455-2000

*Counsel for Defendants M&T Bank Corp., The Estate of Robert G. Wilmers, Rene F. Jones, Mark J. Czarnecki, Brent D. Baird, Angela C. Bontempo, Robert T. Brady, Jefferson T. Cunningham, III, Gary N. Geisel, John D. Hawke, Jr., Patrick W. E. Hodgson, Richard King, Jorge G. Pereira, Melinda R. Rich, Robert E. Sadler, Jr., and Herbert L. Washington*